**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Andre J. KARPIERZ, Defendant–**
**Appellant.**

**No. 04CA0081.**

Colorado Court of Appeals,
Div. III.

Oct. 5, 2006.

Certiorari Denied Aug. 27, 2007.

John W. Suthers, Attorney General, Susan E. Friedman, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge GRAHAM.

Defendant, Andre Karpierz, appeals from the trial court's order denying his Crim. P. 35(c) motion for postconviction relief. We affirm.

Over defense counsel's objection, defendant pleaded guilty to first degree murder after deliberation and was sentenced to life in the Department of Corrections (DOC) without the possibility of parole.

Defendant filed a Crim. P. 35(c) motion, seeking to withdraw his guilty plea on the grounds that he was not properly advised by the court concerning a psychiatric evaluation; that he was not competent at the time of the plea; that the examining psychiatrist was biased and had a conflict; and that he received ineffective assistance of counsel. After a hearing, the trial court denied the motion.

This appeal followed.

## I. Standard of Review

In reviewing the denial of a Crim. P. 35 motion, we will not disturb the trial court's determination on appeal if the record supports its findings and judgment. *See Kailey v. Colo. State Dep't of Corr.*, 807 P.2d 563 (Colo.1991). It is within "the province of the court, as the trier of fact, to determine the credibility of the witnesses and the weight to be given their testimony." *Kailey v. Colo. State Dep't of Corr., supra*, 807 P.2d at 567.

## II. Advisement

Defendant contends that the trial court failed to advise him about the nature and consequences of a competency hearing and the statutory and constitutional rights attendant thereto. He urges that he should have been advised of his right to counsel and his right against self-incrimination, as required under § 16–8–117, C.R.S.2006, and *People v. Branch*, 805 P.2d 1075 (Colo.1991), when the trial court ordered a forensic psy-

chiatrist to evaluate whether he was competent at the time he entered a guilty plea. The People contend that the procedural safeguards outlined in § 16–8–117 and *People v. Branch, supra*, do not apply where a defendant seeks, via a Crim. P. 35(c) postconviction motion, a determination nunc pro tunc whether he was competent at the time he entered a guilty plea. We agree with the People.

Section 16–8–117 states:

When a determination is to be made as to a defendant's competency to proceed ..., the court shall explain to the defendant the nature and consequences of the proceeding and the rights of the defendant under this section.... The defendant, if he wishes to contest the question, may request a hearing which shall then be granted as a matter of right. At the hearing, the defendant and the prosecuting attorney are entitled to be present in person, to examine any reports of examination or other matter to be considered by the court as bearing upon the determination, to introduce evidence, summon witnesses, cross-examine witnesses for the other side or the court, and to make opening and closing statements and argument. The court may examine or cross-examine any witness called by the defendant or prosecuting attorney and may summon and examine witnesses on its own motion.

The mandatory advisement outlined in § 16–8–117 is necessary to safeguard the defendant's Fifth and Sixth Amendment rights. *People v. Branch, supra*. Discharge of this responsibility requires a trial court to advise a defendant that he has the right not to say anything to the psychiatrist during the competency examination; that his statements to the psychiatrist can be used against him at the guilt phase of the trial as rebuttal or impeachment evidence; that he has the right to confer with counsel before submitting to the competency examination; and that the court will appoint an attorney for the defendant at state expense if the defendant is unable to retain counsel prior to the competency examination. A trial court's failure adequately to advise a defendant of his Fifth and Sixth Amendment rights and to provide

him with the opportunity to confer with counsel prior to the commencement of the competency examination precludes the prosecution from using such statements as substantive evidence during its case-in-chief at the guilt phase of the trial. *People v. Branch, supra,* 805 P.2d at 1082–83.

As the People point out, *People v. Branch, supra,* deals only with the prosecutorial use of the defendant's statements to a court-appointed psychiatrist in a court-ordered competency examination during the guilt phase of a criminal trial. The *Branch* court specifically limited its holding, noting that "[n]othing in our opinion is intended to affect the admissibility of such statements at a trial on the issue raised by a plea of insanity or at a trial on the issue of the defendant's competency to proceed." *People v. Branch, supra,* 805 P.2d at 1080 n. 2; *see also Leick v. People,* 140 Colo. 564, 566, 345 P.2d 1054, 1055 (1959) (the determination of sanity after sentence does not require the safeguards of a judicial proceeding because "it does not go to the question of guilt but to its consequences").

Here, the evidence acquired during the retrospective competency examination was not used to establish guilt; defendant had already pleaded guilty and been sentenced. Thus, this is not a situation like that in *People v. Branch, supra,* where there is the danger that, in the absence of counsel, the defendant might be coerced into giving information which can be used against him. Because defendant already confessed and pleaded guilty, there is no self-incrimination issue. Accordingly, the trial court did not err in failing to advise defendant that he has the right not to say anything to the psychiatrist during the competency examination or that his statements to the psychiatrist can be used against him at the guilt phase of the trial. *See People v. Branch, supra; cf. People v. Galimanis,* 765 P.2d 644, 647 (Colo. App.1988) ("Self-incrimination, by definition, applies to the admission of evidence to aid in establishing the guilt of the accused, not his sanity.").

Because there is no requirement that a trial court "make a post-conviction competency determination," *People v. Palmer,* 31 P.3d 863, 869 (Colo.2001), it was not necessary for the trial court to advise defendant of his right to a competency hearing. Further, because the postconviction motion was already set for a hearing when the court ordered defendant to submit to a competency examination, there was no need to advise defendant of his right to a hearing.

It also would have been unavailing for the trial court to advise defendant of his right to confer with counsel prior to submitting to the competency examination because he was already represented by counsel.

Finally, it would have been superfluous for the trial court to advise defendant of his right to contest a competency determination and his right to introduce evidence, summon witnesses, and cross-examine witnesses because defendant had already retained his own expert for the purpose of determining competency.

Thus, the procedural safeguards outlined in § 16–8–117 and *People v. Branch, supra,* are not applicable here.

### III. Examining Psychiatrist

Next, defendant contends that his statutory and constitutional rights were violated when he was evaluated by a psychiatrist who was not "neutral and detached" and by whom defendant had been previously treated. We are not persuaded.

Upon the People's request, the court ordered S.B., a forensic psychiatrist, to conduct a retrospective competency examination of defendant. The People then informed the court and defense counsel that S.B. had previously treated defendant two times upon his entrance into the DOC. However, no objection was lodged by defendant. At the Crim. P. 35(c) hearing, defense counsel did not object to S.B.'s qualification as an expert in forensic psychiatry and stipulated to the admissibility of her report.

Defendant claims that S.B. was not neutral and detached because she was hired by the prosecution. Defendant cites § 16–8–106(1), C.R.S.2006, for the proposition that a competency evaluation must be administered by a "neutral and detached" expert. Section 16–8–106(1) provides:

All examinations ordered by the court in criminal cases shall be accomplished by the entry of an order of the court specifying the place where such examination is to be conducted and the period of time allocated for such examination. The defendant may be committed for such examination to the Colorado psychiatric hospital in Denver, the Colorado mental health institute at Pueblo, the place where he or she is in custody, or such other public institution designated by the court. In determining the place where such examination is to be conducted, the court shall give priority to the place where the defendant is in custody, unless the nature and circumstances of the examination require designation of a different facility. The defendant shall be observed and examined by one or more psychiatrists during such period as the court directs; except that, if the examination is for the purpose of determining the defendant's competency to proceed, then the competency evaluation shall be conducted by a licensed psychiatrist or a licensed psychologist who is trained in forensic competency assessments, or a psychiatrist or psychologist who is in forensic training and practicing under the supervision of a licensed psychiatrist with expertise in forensic psychiatry or a licensed psychologist with expertise in forensic psychology. For good cause shown, upon motion of the prosecution or defendant, or upon the court's own motion, the court may order such further or other examination, including services of psychologists, as is advisable under the circumstances. Nothing in this section shall abridge the right of the defendant to procure a psychiatric examination as provided in section 16–8–108.

The words "neutral and detached" do not appear anywhere in § 16–8–106(1) or in any section of title 16, section 8. Nor do they appear in the Chief Justice Directives cited by defendant. We therefore conclude that there is no statutory or regulatory requirement that a court-appointed expert be "neutral and detached."

Defendant also cites *Hendricks v. People,* 10 P.3d 1231 (Colo.2000), in support of his right to be evaluated by a neutral and detached expert. However, *Hendricks* interpreted § 16–8–103(2), C.R.S.2006, which applies when defense counsel wants to enter a plea of not guilty by reason of insanity over the defendant's objection. Under those circumstances, a neutral evaluation is necessary for the trial court to determine whether substantial evidence exists to support an insanity defense. *Hendricks v. People, supra.* However, an insanity determination is unrelated to a postconviction competency determination. *See People v. Gillings,* 39 Colo.App. 387, 393, 568 P.2d 92, 97 (1977) (incompetency merely abates the action and is procedural in effect, while insanity is substantive and renders the defendant not guilty). Thus, the rationale articulated in *Hendricks v. People, supra,* is not applicable to a retrospective, postconviction competency determination.

Nevertheless, defendant has failed to demonstrate how the appointment of S.B. undermined the fundamental fairness of the proceedings. Defendant employed his own psychiatric expert who tendered a written report and testified at the Crim. P. 35(c) hearing. Before S.B. conducted the competency examination, the People informed the court and defense counsel that S.B. had previously treated defendant at the Denver Reception and Diagnostic Center, and defense counsel did not object. Defense counsel also stipulated to the admission of S.B.'s report. At the postconviction motion hearing, defense counsel cross-examined S.B., but never challenged her court-ordered appointment.

There is nothing in the record to support defendant's bald assertion that S.B. was unreliable or biased because of her previous relationship with defendant. Indeed, in her report, S.B. stated that she was neutral and, at the time of the evaluation, had "no opinion with respect to [defendant's] competency to enter the plea."

Finally, defendant's argument that the prosecution committed misconduct by failing to inform the trial court and defense counsel that it paid S.B.'s expert fees is belied by the record. In her report, S.B. stated that she performed the competency examination at the request of the prosecutor and informed defendant that she would be sending

the bill to the district attorney and would be paid by the state. Defendant never objected to the state paying S.B.'s expert fees and did not cross-examine S.B. at the postconviction hearing as to why she was sending her bill to the district attorney or being paid by the state. Furthermore, contrary to defendant's contention, the prosecution's statements at the postconviction hearing that S.B. was court-appointed and that her opinion had been rendered pursuant to the request of the court were accurate. Indeed, the court appointed S.B. to perform a retrospective competency evaluation on defendant, and defendant never objected to such appointment until now.

## IV. Competency

■ We also reject defendant's contention that the trial court erred in concluding that he was competent when he entered his guilty plea and that his plea was knowing, voluntary, and intelligent.

■ Because a plea of guilty effects a waiver of fundamental rights, to be valid it must be knowingly, intelligently, and voluntarily made. *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *People v. Pozo*, 746 P.2d 523 (Colo.1987). A plea is knowingly made, and constitutionally valid, only if the trial court ensures that the defendant is fully aware of the consequences of his plea. *People v. Adrian*, 701 P.2d 45 (Colo. 1985).

■ Under section 16–8–102(3), C.R.S. 2006, a defendant who suffers from a mental disease or defect which renders him incapable of (1) understanding the nature and course of the proceedings against him, or of (2) participating or assisting in his defense or cooperating with his defense counsel, is "incompetent to proceed." *People v. Palmer, supra*, 31 P.3d at 866.

■ A defendant's competence to enter a guilty plea is a question of fact. We will therefore uphold a trial court's competency determination absent an abuse of discretion. Furthermore, the law presumes that a defendant is competent; thus, the burden to prove incompetency rests with the accused. *See People v. Palmer, supra.*

Defendant presented the report of his expert psychiatrist who opined that

the combination of medications that have been demonstrated to have over-sedative effects for [defendant], his unresolved conflicts with [defense counsel], and his unexplained about face on entering a guilty plea, persuade [me] that ... [defendant] was suffering from a mental disease at the time he entered his guilty plea, which rendered him incapable of understanding the nature and course of the proceedings against him or of participating or assisting his defense or cooperating with his defense counsel.

Defendant's cellmate testified that during the time defendant entered his plea, defendant appeared groggy and "zombie-like."

This evidence was contradicted by the report of S.B. who concluded that defendant's medications did not result in "his inability to think for himself and reason his way through entering a guilty plea" and that he was competent when he entered his guilty plea. The trial court found S.B.'s report to be "detailed and well reasoned."

At the Crim. P. 35(c) hearing, defense counsel testified that, while defendant appeared to be overwhelmed by grief, defendant was consistently alert, always answered questions appropriately, and never appeared groggy or sleepy. Defense counsel testified that, although he was unaware defendant was taking medication, there was never any indication that defendant was not fully alert or unable to assist in his defense. This testimony was consistent with the testimony of the investigator, who stated that he had no concerns about defendant's competency and that defendant showed no signs of over-medication and appeared alert, oriented, and capable of conversing intelligently with the officers. Testimony by a jail social worker affirmed that he had no concerns regarding defendant's competency.

A journalist also testified that when she interviewed defendant, he was oriented and did not appear sleepy or sedated. Defendant intimated to her that he wanted to plead guilty, but his attorney was holding him back from doing so.

The medical records from Teller County Jail and the testimony from the jail social worker show that defendant did not take his anti-psychotic medication, which has sedative side effects, until after he entered his plea. The jail social worker also testified that there was no indication that defendant experienced grogginess or other side effects from his sleeping aid medication, which he took the night before his plea.

At the providency hearing, defendant told the court that he wished to plead guilty, against the advice of his attorney. He indicated that he had read, understood, and signed the written plea agreement, that he had discussed the agreement with his attorney, and that he did not have any questions about the agreement. The court found that defendant was alert, intelligent, not under the influence of alcohol, drugs, or medication and that the plea was entered on a knowing, voluntary, and intelligent basis. In response to the court's question whether he was, in the past or at that time, under any mental disability, defendant replied in the negative. In response to the court's question why he wanted to plead guilty, defendant stated: "Your honor, I am guilty. That's why I'm pleading guilty."

Based on this evidence, the court concluded that "defendant's motions to withdraw his plea based on his allegations that depression and medication deprived him of the ability to understand his plea and to assist in his defense have not been supported by the evidence."

The totality of the evidence presented supports the trial court's conclusion. *See People v. Lewis,* 849 P.2d 855 (Colo.App.1992). Thus, we perceive no error.

### V. Assistance of Counsel

■ Finally, defendant argues that he was denied effective assistance of counsel because his attorney failed to raise the issue of competency at the time of the plea; failed to discover that defendant was mentally ill, taking medication, and not under the influence of medication at the time he committed the crime; and failed adequately to investigate possible mental status defenses. He argues that, but for counsel's deficient representation, he would not have pleaded guilty. We disagree.

■ To succeed on a claim for ineffective assistance of trial counsel, a defendant must show that his counsel's performance was constitutionally deficient and that the deficient performance resulted in prejudice to the defendant. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Davis v. People,* 871 P.2d 769 (Colo. 1994). Because a defendant must show both deficient performance and prejudice, a court may resolve the claim solely on the basis that the defendant has failed in either regard. *People v. Garcia,* 815 P.2d 937 (Colo.1991). To prove prejudice, a defendant must show a reasonable probability that, but for counsel's ineffective assistance, the result of the proceeding would have been different. *People v. Alexander,* 129 P.3d 1051 (Colo.App.2005). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland v. Washington, supra; Davis v. People, supra.*

Assuming, arguendo, that counsel's assistance was deficient, defendant fails to show how the outcome would have been different. Because the court ultimately determined that defendant was competent at the time he entered his guilty plea, it was of no consequence that defense counsel failed to raise an incompetency defense at the time defendant entered his plea. If defense counsel had raised the defense earlier, there still would have been the same end result—defendant was competent to enter a guilty plea. Furthermore, the evidence is overwhelming that defendant at all times intended to plead guilty, even after being advised by both the court and on numerous occasions by defense counsel of several possible defenses, including mental status defenses. Thus, defendant has failed to demonstrate that, but for counsel's ineffective assistance, the result of the proceeding would have been different.

The judgment is affirmed.

Judge RUSSEL and Judge

STERNBERG * concur.