The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
April 19, 2018

## 2018COA51

**No. 14CA1181, People v. Figueroa-Lemus — Criminal Procedure
— Withdrawal of Plea of Guilty or Nolo Contendere — Deferred
Judgment and Sentence**

A division of the court of appeals concludes that, following

*Kazadi v. People*, 2012 CO 73, 291 P.3d 16, a defendant may

challenge an unrevoked deferred judgment under Crim. P. 32(d).

Further, the majority concludes the court has jurisdiction to review

a district court's denial of a motion to withdraw a guilty plea when

that motion challenged a deferred judgment still in effect.

The dissent concludes that the court of appeals lacks

jurisdiction to review the denial of a Crim. P. 32(d) motion

challenging a deferred judgment that has not been revoked.

Considering the merits of the motion to withdraw the guilty

plea, the majority concludes that the defendant did not establish a

fair and just reason for withdrawal because his counsel's performance was not deficient.

Accordingly, the court affirms the district court's order.

COLORADO COURT OF APPEALS                              **2018COA51**

Court of Appeals No. 14CA1181
Jefferson County District Court No. 12CR2874
Honorable Christie A. Bachmeyer, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Eswin Ariel Figueroa-Lemus,

Defendant-Appellant.

ORDER AFFIRMED

Division I
Opinion by JUDGE TAUBMAN
Richman, J., concurs
Furman, J., dissents

Announced April 19, 2018

Cynthia H. Coffman, Attorney General, William G. Kozeliski, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Mark Evans, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Eswin Ariel Figueroa-Lemus, appeals the district court's order denying his Crim. P. 32(d) motion to withdraw his guilty plea. We first consider whether we have jurisdiction to consider the appeal given that the guilty plea involves a deferred judgment that is still in effect. We conclude that we do because the supreme court in *Kazadi v. People*, 2012 CO 73, 291 P.3d 16, expressly provided that a defendant may challenge such a plea under Crim. P. 32(d). Next, we consider the merits and reject Figueroa-Lemus's argument that counsel were constitutionally ineffective for failing to advise him of the immigration consequences of his plea. Accordingly, we affirm the district court's order.

## I.  Background

¶ 2     Figueroa-Lemus pleaded guilty to possession of a schedule II controlled substance and driving under the influence (DUI). The parties stipulated to a two-year deferred judgment on the possession count and probation on the DUI count. The court accepted the deferred judgment and sentenced Figueroa-Lemus to two years of probation.

¶ 3     About five months later, Figueroa-Lemus filed a Crim. P. 32(d) motion to withdraw his guilty plea to the possession count. He

1

argued that defense counsel (Ed Ferszt) and the immigration attorney Ferszt had him speak with (Samuel Escamilla) were constitutionally ineffective for failing to advise him of the clear immigration consequences of the plea. Specifically, he alleged that counsel failed to investigate, research, and advise him that the plea would (1) result in mandatory deportation; (2) destroy the defense of cancellation of removal; (3) result in mandatory lifetime inadmissibility to the United States; and (4) result in mandatory immigration detention without bond. He also alleged that, if he had been properly advised, it would have been rational for him to reject the plea offer because it gave him no benefit from an immigration perspective.

¶ 4    After an evidentiary hearing, the district court denied the motion.

¶ 5    Figueroa-Lemus appealed the district court's order denying the Crim. P. 32(d) motion. The People filed a motion to dismiss the appeal, arguing that we do not have jurisdiction to review that order. They contend that the order is not final and appealable because the motion challenged a deferred judgment (a non-final

2

judgment), which had not been revoked when the court entered the order or when Figueroa-Lemus filed the notice of appeal.

¶ 6     Initially, we announced an opinion based, in part, on a case that had been previously published by a division of this court, *People v. Sosa*, 2016 COA 92W, 395 P.3d 1144.  We did not discover that *Sosa* had been withdrawn (due to a reporting error on Westlaw) until the People filed a petition for rehearing.  We then withdrew our original opinion and ordered Figueroa-Lemus to respond to the arguments set forth in the People's petition for rehearing.  Having reviewed the People's motion to dismiss, the briefs, the People's petition for rehearing, and the response, we issue the following opinion.[1]

## II.  Jurisdiction

¶ 7     Every court has the authority to decide the question of its own jurisdiction.  *See In re Water Rights of Elk Dance Colo., LLC*, 139 P.3d 660, 670 (Colo. 2006).  As conferred by statute, we have initial appellate jurisdiction over final judgments entered by a district

---

[1] By issuing this opinion, we effectively deny the People's motion to dismiss this appeal and grant, in part, their petition for rehearing. In their petition, the People requested that we withdraw our previous opinion, which we have done.

court. *See* § 13-4-102(1), C.R.S. 2017; C.A.R. 1(a)(1). A final judgment is "one that ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceedings." *People v. Guatney*, 214 P.3d 1049, 1051 (Colo. 2009). In a criminal case, a final judgment is entered when a defendant is acquitted, has the charges dismissed, or is convicted and sentenced. *See id.*

¶ 8 A deferred judgment is not a final judgment. *See People v. Carbajal*, 198 P.3d 102, 105 (Colo. 2008). Thus, a deferred judgment may not be subjected to either Crim. P. 35 or direct review while it is still in effect. *See Kazadi*, ¶ 10, 291 P.3d at 19.

¶ 9 Nevertheless, a defendant may challenge a deferred judgment under Crim. P. 32(d). *See id.* at ¶ 10, 291 P.3d at 19-20. In *Kazadi*, the parties argued for the first time in the supreme court that the defendant should be allowed to pursue a Crim. P. 32(d) motion to withdraw his guilty plea. *See id.* at ¶ 9, 291 P.3d at 19. The supreme court agreed, concluding that the rule "allows a defendant to move for withdrawal of a guilty plea before sentence is imposed or imposition of sentence is suspended." *Id.* at ¶ 10, 291

P.3d at 20; *cf. People v. Corrales-Castro*, 2017 CO 60, ¶ 3, 395 P.3d 778, 779 (concluding that Crim. P. 32(d) did not provide a remedy for a defendant who sought to withdraw his guilty plea *after* he had completed the terms of the deferred judgment, the plea had been withdrawn, and the case had been dismissed because Crim. P. 32(d) requires that a plea exist in order for it to be withdrawn).  The supreme court then set forth the standards applicable to a Crim. P. 32(d) motion, including the standard of appellate review.  *See Kazadi*, ¶¶ 14-15, 291 P.3d at 21.

¶ 10    Like the defendant in *Kazadi*, Figueroa-Lemus pleaded guilty to a drug felony and stipulated to a deferred judgment on that count.  The deferred judgment remains in effect, and he has not yet been sentenced on that count.  Thus, we conclude that Crim. P. 32(d) provided him with a mechanism to challenge the guilty plea in the district court.

¶ 11    We further conclude that we may review the district court's order denying the Crim. P. 32(d) motion.  It is unlikely that the supreme court would provide a remedy in the district court without allowing appellate review of the district court's decision.  *See* Colo. Const. art. II, § 6 (guaranteeing every person a right of access to

5

courts of justice); *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 472 (1926) ("Equity will not suffer a wrong without a remedy."). Indeed, *Kazadi* expressly overruled *People v. Anderson*, 703 P.2d 650 (Colo. App. 1985). *See Kazadi*, ¶ 20, 291 P.3d at 22-23. In *Anderson*, a division of this court had concluded that a deferred judgment was the equivalent of a suspension of sentence (making the Crim. P. 32(d) motion untimely) and the order denying a Crim. P. 32(d) motion was not a final, appealable order under C.A.R. 1(a)(1). *See Anderson*, 703 P.2d at 652.

¶ 12 In reaching this conclusion, we reject the People's argument that C.A.R. 21(a)(1) provides a defendant with a viable remedy for appellate review when the plea involves a deferred judgment. First, relief under that rule is discretionary and is only available in extraordinary circumstances. Indeed, as shown in the protocols section of the supreme court's website, granting review of a C.A.R. 21 petition "rarely occurs." For example, in 2015, only 15 of the 242 petitions filed resulted in the issuance of an order to show cause. *See* Colo. Judicial Branch, *Protocols of the Colorado Supreme Court*, https://perma.cc/7MCL-QVNU. Second, contrary to the People's contention that "the state constitutional right to appellate

6

review is satisfied by discretionary review," the supreme court has held that the certiorari review process cannot adequately afford a defendant a right of appellate review on the merits. *Bovard v. People*, 99 P.3d 585, 592-93 (Colo. 2004). We also reject the People's implication that relying on article II, section 6 of the Colorado Constitution would be improper because that provision does not concern the scope or substance of any remedy afforded to a defendant. We agree that the provision does not guarantee the scope or substance of any remedy. But it does require a review on the merits — a review that is not assured by the certiorari review process. *Allison v. Indus. Claim Appeals Office*, 884 P.2d 1113, 1120 (Colo. 1994).

¶ 13 Third, if appellate review of the denial of a Crim. P. 32(d) motion was contingent upon the revocation of the deferred judgment, review would be time barred if it was revoked more than forty-nine days after the order had been entered. *See* C.A.R. 4(b)(1) (requiring that a notice of appeal in a criminal case be filed within forty-nine days after the entry of the order appealed from); *Estep v. People*, 753 P.2d 1241, 1246 (Colo. 1988) ("The timely filing of a notice of appeal is a jurisdictional prerequisite to appellate review.").

¶ 14    For these reasons, we will review the order denying Figueroa-Lemus's Crim. P. 32(d) motion.

## III.  Crim. P. 32(d) Motion

¶ 15    Figueroa-Lemus argues that his guilty plea was not made knowingly, voluntarily, and intelligently because Ferszt never informed him of the clear immigration consequences of the plea.  He contends that Ferszt failed to advise him that pleading guilty to the crime of possession of a schedule II controlled substance would (1) render him permanently inadmissible to the United States; (2) subject him to mandatory detention during immigration proceedings; (3) render him ineligible for the defense of cancellation of removal; and (4) subject him to mandatory deportation from the United States.  We disagree.

### A.  Standard of Review

¶ 16    We review the district court's denial of a Crim. P. 32(d) motion for an abuse of discretion.  *See Kazadi,* ¶ 15, 291 P.3d at 21.  The court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, *see People v. Finley*, 141 P.3d 911, 913 (Colo. App. 2006), or when its decision is based on an erroneous

view of the law or facts.  *See People v. Segovia*, 196 P.3d 1126, 1129 (Colo. 2008).

## B.  Crim. P. 32(d) Standards

¶ 17    A defendant does not have an absolute right to withdraw a guilty plea.  *See Kazadi*, ¶ 14, 291 P.3d at 21.  However, a court may allow a defendant to do so if he has shown a fair and just reason for the withdrawal — in other words, if denial of the request would subvert justice.  *See id.*

¶ 18    The defendant has the burden of establishing that there is a fair and just reason to withdraw the guilty plea.  *See Crumb v. People*, 230 P.3d 726, 730 (Colo. 2010).  A defendant can do so by showing that the plea was made involuntarily.  *See id.*  A plea may be made involuntarily if a defendant does not completely understand the consequences of the plea and it is not the result of a free and rational choice.  *See People v. Kyler*, 991 P.2d 810, 816 (Colo. 1999).

¶ 19    The ineffective assistance of counsel may also constitute a fair and just reason to withdraw the plea.  *See Kazadi*, ¶ 21, 291 P.3d at 23.  To prevail on a Crim. P. 32(d) motion based on the ineffective assistance of counsel, a defendant "must meet the standards both

for ineffective assistance of counsel and for withdrawal of a guilty plea." *People v. Madera*, 112 P.3d 688, 692 (Colo. 2005).

### C. Ineffective Assistance of Counsel Standards

¶ 20    An ineffective assistance of counsel claim presents mixed questions of law and fact. *See Dunlap v. People*, 173 P.3d 1054, 1063 (Colo. 2007). Thus, we defer to the district court's findings of fact when they are supported by the record but review de novo its legal conclusions. *See id.*

¶ 21    To prove a claim of ineffective assistance of counsel during the plea process, "a defendant must show (1) counsel's representation fell below an objective standard of reasonableness and (2) a reasonable probability exists that but for counsel's errors, he or she 'would not have pleaded guilty and would have insisted on going to trial.'" *People v. Kazadi*, 284 P.3d 70, 73 (Colo. App. 2011) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)), *aff'd*, 2012 CO 73, 291 P.3d 16. "Because a defendant must show both deficient performance and prejudice, a court may resolve the claim solely on the basis that the defendant has failed in either regard." *People v. Karpierz*, 165 P.3d 753, 759 (Colo. App. 2006).

¶ 22     Plea counsel's performance falls below an objective standard of reasonableness — in other words, is deficient — when he or she fails to present the defendant with the opportunity to make a reasonably informed decision about whether to accept a plea offer. *See Carmichael v. People*, 206 P.3d 800, 806 (Colo. 2009).  Thus, a defendant is entitled to assume that his or her counsel will provide "sufficiently accurate advice" to enable him or her "to fully understand and assess the serious legal proceedings in which he [or she] is involved." *People v. Pozo*, 746 P.2d 523, 526 (Colo. 1987).

¶ 23     Defense counsel in a criminal case has a duty to investigate relevant immigration law when he or she is aware that the client is a noncitizen.  *See id.* at 529.  When the immigration law is *not* succinct and straightforward, "a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Padilla v. Kentucky,* 559 U.S. 356, 369 (2010).  Counsel must advise a defendant of the risk of deportation when that consequence is clear.  *See id.* at 368 (concluding that the terms of the relevant immigration statute were "succinct, clear, and explicit" where defense counsel "could have easily determined that [the defendant's]

11

plea would make him eligible for deportation simply from reading the text of the statute"). However, *Padilla* does not require counsel to "use specific words to communicate" those consequences. *Chacon v. State*, 409 S.W.3d 529, 537 (Mo. Ct. App. 2013).

### D. Federal Immigration Consequences

¶ 24 A noncitizen who is convicted of violating any law relating to a controlled substance (other than a single offense involving possession of thirty grams or less of marijuana) is deportable. *See* 8 U.S.C. § 1227(a)(2)(B)(i) (2012). If the defendant is already in the United States, he or she is subject to removal on the order of the Attorney General. *See* 8 U.S.C. § 1227(a). The Attorney General is required to take a noncitizen with such a conviction into custody, and the noncitizen generally may not be released from custody. *See* 8 U.S.C. § 1226(c)(1)(B), (c)(2) (2012).

¶ 25 Such a conviction also (1) stops the accrual of the seven-year period of continued residence needed for a lawful permanent resident to seek cancellation of removal, *see* 8 U.S.C. § 1229b(a)(2), (d)(1) (2012); and (2) makes a noncitizen inadmissible and, thus, ineligible to be admitted into the United States. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(II) (2012). Also, a conviction for purposes of federal

immigration law includes a deferred judgment and sentence. *See* 8 U.S.C. § 1101(a)(48)(A) (2012) (defining a conviction as a guilty plea where "the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed").

## E. Crim. P. 32(d) Hearing

¶ 26 During the Crim. P. 32(d) hearing, Ferszt testified that

- as evidenced by his notes, he learned that Figueroa-Lemus was a permanent resident during the initial intake;

- he explained to Figueroa-Lemus that if he pleaded guilty, he would eventually be picked up and deported and it was not a question of if, but when;

- although not reflected in a written note, he talked about the deportation issue in every conversation he had with Figueroa-Lemus;

- he understood that a guilty plea to the drug charge would make Figueroa-Lemus mandatorily deportable and mandatorily inadmissible, and that the defense of cancellation of removal would not apply;

13

- he did not use "terms of art" but tended to use "a little more colorful language" by telling Figueroa-Lemus that if he pleaded guilty, "you're gone," he would lose his residency and eventually be deported, there was no way around it, and there was "no way to come and ask for forgiveness or a waiver or a pardon";

- he did not talk to Figueroa-Lemus about cancellation of removal because, by telling him he would be deported, it encompassed saying that there was no opportunity for cancellation of removal;

- they initialed next to the paragraph about immigration consequences on the Crim. P. 11 advisement to "document that the issue was again brought up and discussed in the conference room right outside of court," but the paragraph did not encapsulate all they discussed;

- he advised Figueroa-Lemus numerous times that the deferred judgment "would confer no benefit to him whatsoever, other than avoiding the state felony conviction," and "for purposes of immigration, it was the

same as if he was pleading guilty straight up" and the admission would be "permanent and binding"; and

- he pleaded with Figueroa-Lemus numerous times to talk to an immigration lawyer and, when he failed to do so, Ferszt referred Figueroa-Lemus to Escamilla.

¶ 27 Escamilla then testified that, as evidenced by his notes, he advised Figueroa-Lemus that if he pleaded guilty he would be deported. He also explained that the only drug conviction he could have on his record was possession of thirty grams or less of marijuana and told him that immigration officials would treat the deferred judgment as a plea of guilty, which would stay on his record forever for immigration purposes.

¶ 28 In contrast, Figueroa-Lemus testified that

- Ferszt never explained anything about the immigration consequences of the plea but told him that, if he successfully completed the deferred judgment, he "would have no problem with [i]mmigration and could move on to seek[] citizenship" — Ferszt never told him that he would be deported;

15

- Escamilla advised him that "probably these cases could be deportable," but they could possibly delay the proceedings so he could become a citizen before he pleaded guilty;

- Escamilla advised him that if he complied with the probation on the deferred judgment, it would be erased from his record; and

- he was not telling the truth when he told the court during the providency hearing that he understood the Crim. P. 11 advisement.

¶ 29    The district court denied the Crim. P. 32(d) motion.  It found that neither Ferszt's nor Escamilla's performance fell below an objective standard of reasonableness because (1) both told Figueroa-Lemus "numerous times that he would be deported if he plead[ed] guilty to a drug charge, and left with no defense"; and (2) Ferszt advised Figueroa-Lemus that he would be permanently inadmissible "with no pardon."  The court also concluded that counsel were not required to advise Figueroa-Lemus that he would be subject to mandatory detention without bond because it was not a clear consequence of the guilty plea and Figueroa-Lemus had not

16

cited to (and the court was not aware of) any authority to support that position.

## F. Application

¶ 30    Here, the immigration consequences of pleading guilty to a felony drug offense involving a schedule II controlled substance (including mandatory deportation, ineligibility for the cancellation of removal defense, and permanent inadmissibility) were clear because those consequences could be discerned from the face of the federal statutes. *See, e.g.*, *People v. Campos-Corona*, 2013 COA 23, ¶ 13, 343 P.3d 983, 986 (concluding that the mandatory removal consequence in the statute for a controlled substance offense was "succinct and straightforward"). Therefore, counsel was required to advise Figueroa-Lemus of those consequences. *See Padilla*, 559 U.S. at 369.

¶ 31    We conclude that counsel adequately advised Figueroa-Lemus. Because it is supported by the record, we defer to the district court's finding that both Ferszt and Escamilla told Figueroa-Lemus on multiple occasions that a guilty plea to a drug felony would result in deportation. Escamilla testified that he told Figueroa-Lemus that he would be deported if he pleaded guilty. That

17

testimony was supported by a note that Escamilla made when he gave Figueroa-Lemus the advisement.

¶ 32 And, Ferszt's testimony that he told Figueroa-Lemus that if he pleaded guilty, "you're gone," he would lose his residency and eventually be deported, there was no way around it, and there was "no way to come and ask for forgiveness or a waiver or a pardon" sufficiently communicated that Figueroa-Lemus would be deported if he pleaded guilty. That language, along with Ferszt's advisement that the admission would be permanent and binding for immigration purposes, was also sufficient to convey to Figueroa-Lemus that he was not eligible for the defense of cancellation of removal and would be inadmissible — that is, would not be able to return to the United States.

¶ 33 Although Figueroa-Lemus testified that counsel did not tell him that he would be deported (but only that he could be deported), it was for the district court (as the fact finder) to determine the credibility of the testimony, weigh the evidence, and resolve conflicts, inconsistencies, and disputes in the evidence. *See People v. Bertrand*, 2014 COA 142, ¶ 8, 342 P.3d 582, 584. In the end, the court found that Figueroa-Lemus's testimony was not credible and

directly conflicted with notes from Ferszt's file, emails between Ferszt and the prosecutor, the Crim. P. 11 petition, and the record from the providency hearing.

¶ 34    Finally, we reject Figueroa-Lemus's argument that counsel should have advised him that he would be held in custody during the removal proceeding (mandatory detention). Figueroa-Lemus cites to no authority, and we have found none, that would require counsel to give this advice. Counsel admitted during the Crim. P. 32(d) hearing that he did not have any case law to support the argument. Although he cites to an American Bar Association standard that states counsel should advise a client of all potential adverse immigration consequences and includes immigration detention in the list of those consequences, *see* Am. Bar Ass'n, *Fourth Edition of the Criminal Justice Standards for the Defense Function* 4-5.5(c) (Feb. 2015), https://perma.cc/PTU3-9WZQ, those standards are not binding precedent. *See People v. Aleem*, 149 P.3d 765, 774 (Colo. 2007). In any event, we note that Figueroa-Lemus fails to explain how such an advisement would have affected his decision to accept the plea offer if he had been advised that he would be detained before he was deported.

¶ 35     Under these circumstances, counsel's performance was not deficient.  Because counsel's performance was not deficient, we need not consider whether Figueroa-Lemus was prejudiced.  *See Karpierz*, 165 P.3d at 759.  We therefore conclude that the district court did not abuse its discretion when it denied the Crim. P. 32(d) motion.  *See Kazadi*, ¶ 15, 291 P.3d at 21.

## IV.  Conclusion

¶ 36     The order is affirmed.

JUDGE RICHMAN concurs.

JUDGE FURMAN dissents.

JUDGE FURMAN, dissenting.

¶ 37    Because I believe that we do not have jurisdiction to review the order denying the Crim. P. 32(d) motion, I respectfully dissent.

¶ 38    Every court has the authority to decide the question of its own jurisdiction. *In re Water Rights of Elk Dance Colo., LLC*, 139 P.3d 660, 670 (Colo. 2006). As conferred by statute, we have initial appellate jurisdiction over final judgments entered by a district court. § 13-4-102(1), C.R.S. 2017; C.A.R. 1(a)(1). A final judgment is "one that ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceedings." *People v. Guatney*, 214 P.3d 1049, 1051 (Colo. 2009). In a criminal case, there is no final judgment until "the defendant is acquitted, the charges are dismissed, or the defendant is convicted and sentence is imposed." *People v. Gabriesheski*, 262 P.3d 653, 657 (Colo. 2011) (quoting *Guatney*, 214 P.3d at 1051).

¶ 39    But, a deferred judgment is neither a sentence nor a final judgment. *See People v. Carbajal*, 198 P.3d 102, 105-06 (Colo. 2008). Rather, a deferred judgment is "a continuance with probation-like supervision conditions." *Id.* at 106. Accordingly, a

21

deferred judgment "may not be subject to . . . direct appellate review until revoked." *Id.* at 105; *see also Kazadi v. People*, 2012 CO 73, ¶ 18 (relying on *Carbajal* as precedent for its ruling).

¶ 40   Figueroa-Lemus sought to withdraw his guilty plea to the possession count while the deferred judgment was still in place. Although the prosecution filed a motion to revoke the deferred judgment, the district court has not yet ruled on the motion. Because the revocation hearing is still pending, Figueroa-Lemus will not be sentenced on the possession count unless the district court determines that his deferred judgment should be revoked. If the court does make this determination, the court must enter a judgment of conviction and sentence him before the judgment becomes final. *See People v. Wiedemer*, 899 P.2d 283, 284 (Colo. App. 1994).

¶ 41   Under these circumstances, there is no final judgment on Figueroa-Lemus' possession count, and thus, I conclude that we lack jurisdiction to consider this appeal. *See* § 13-4-102(1); C.A.R. 1(a)(1). I would therefore dismiss the appeal without prejudice for lack of jurisdiction.

¶ 42     While I agree with the majority that a defendant may challenge a deferred judgment under Crim. P. 32(d), I disagree with the majority's conclusion that *Kazadi* authorizes appellate courts to review Crim. P. 32(d) motions that are denied by the district court. Indeed, the *Kazadi* court reviewed the legal standards generally applicable to Crim. P. 32(d) motions, including that an appellate court would not overturn the denial of that motion absent an abuse of discretion.  ¶¶ 14-15.  But, *Kazadi* did not address the appealability of an order denying a Crim. P. 32(d) motion while a defendant's deferred judgment is still pending and judgment is not yet final.

¶ 43     I also disagree with the majority's conclusion that "[i]t is unlikely that the supreme court would provide a remedy in the district court without allowing appellate review of the district court's decision." *Supra* ¶ 11.  There are certainly circumstances where an appellate court has jurisdiction to review the denial of a Crim. P. 32(d) motion.  For example, where a defendant's Crim. P. 32(d) motion is denied and judgment is subsequently entered against him, such a judgment would be final and thus reviewable by an appellate court.  The standards laid out in *Kazadi* would be

applicable to that review. ¶¶ 14-15. But, this is not such a case. Alternatively, a defendant could obtain appellate relief under C.A.R. 21(a)(1), which allows the supreme court to exercise discretionary jurisdiction over a case when no other adequate remedy is available.

¶ 44 Finally, I acknowledge that immigration consequences of a deferred judgment plea may remain after it has been successfully completed and the charges dismissed. *See People v. Corrales-Castro*, 2017 CO 60, ¶ 13. But, the supreme court has made clear that consideration of such collateral consequences is not within the purview of this court. *Id.* Accordingly, I respectfully dissent and conclude that we lack jurisdiction to consider this appeal.