22CA1560 Peo v Howard 08-07-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA1560
Arapahoe County District Court No. 13CR2750
Honorable Darren L. Vahle, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Daeshaun Laquel Howard,

Defendant-Appellant.

---

ORDER AFFIRMED

Division V
Opinion by JUDGE HARRIS
Brown and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 7, 2025

---

Philip J. Weiser, Attorney General, Grant R. Fevurly, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Tara Jorfald, Alternate Defense Counsel, Lakewood, Colorado, for Defendant-Appellant

¶ 1     Defendant, Daeshaun Laquel Howard, appeals the district court's summary denial of his Crim. P. 35(c) motion alleging ineffective assistance of counsel.  We affirm.

## I.     Background

¶ 2     In 2013, just after he turned eighteen, Howard shot at two people outside a bar, killing one of them and injuring the other.  A jury convicted him of, among other offenses, first degree murder after deliberation.  The trial court imposed the mandatory sentence of life in prison without parole.

¶ 3     On direct appeal, Howard argued, as relevant here, that his life without parole sentence, which did not account for his "juvenile characteristics," "violated the federal and state constitutions' . . . prohibition against barbaric or disproportionate sentences."  The division rejected that argument and affirmed his life without parole sentence.  *People v. Howard*, slip op. at ¶¶ 75-79 (Colo. App. No. 17CA0829, Dec. 26, 2019) (not published pursuant to C.A.R. 35(e)).

¶ 4     Howard filed a timely pro se Crim. P. 35(c) motion, alleging that his lawyers had provided ineffective assistance during the plea bargaining process.  Later, appointed counsel filed a supplemental motion, alleging in relevant part as follows:

1

- "[F]rom the beginning," Howard told his lawyers that he "wanted a [plea] offer."

- In September 2014, Howard authorized his lawyers to propose a plea agreement with a twenty-five-year sentence.

- The prosecution did not respond to Howard's proposal until May 2016. In an email to defense counsel, the prosecutor rejected Howard's offer and told counsel that negotiations could only continue if Howard were "willing to accept a higher number (at least in the 40s)."[1]

- Counsel did not tell Howard that the prosecution would only consider an offer involving a sentence "in the 40s." Instead, they told Howard that he had to make a "counteroffer" to "get the prosecution down from 48 years," even though, at that point, the prosecution was still open to a sentence "in the 40s."

---

[1] The supplemental motion omits the words "at least," but we quote the language as it appears in the email, which is attached to the motion.

- Howard agreed to seek an offer of a thirty-five-year sentence. Counsel advised Howard about parole eligibility with respect to a thirty-five-year sentence.

- "Because the offer to 'negotiate in the 40s' did not explicitly come with an expiration date," counsel did not advise Howard "that the opportunity to negotiate 'in the 40s' was of limited duration."

- By August 2016, the prosecution "would not consider anything other than 48 [years]."

- Despite Howard's request, counsel declined to speak to Howard's mother or stepfather about the case and whether Howard should plead guilty.

- There was no movement in negotiations for almost a year. A week before the March 2017 trial, Howard met with the prosecution to try to obtain an offer. But by then, even the potential forty-eight-year offer was off the table.

- The case proceeded to trial. It was only during the trial that Howard "realize[d] that he needed to do anything" to "not . . . go to trial." His realization came about after his stepfather explained to him one night "that there was a difference

3

between a 48-year sentence and a life sentence." So Howard told his lawyers that he would accept a forty-eight-year offer, but the prosecution declined to extend one.

¶ 5 Based on these factual allegations, Howard asserted that his counsel had performed deficiently by (1) failing to disclose that the prosecution would continue plea negotiations only if Howard were willing to accept an offer "in the 40s"; (2) failing to tell Howard that the opportunity to negotiate for an offer "in the 40s" was likely to expire at some point; (3) "improperly push[ing] the plea negotiations higher" than necessary, by suggesting a forty-eight-year sentence to the prosecution;[2] (4) failing to consult with Howard's family about the plea negotiations; and (5) failing to adequately advise Howard about the "benefits of pleading guilty to a 40-something year sentence," including failing to explain the "(minimal) difference between" a thirty-five-year sentence and a sentence "in the 40s."

---

[2] The initial pro se motion alleged that the prosecution conveyed an early, tentative offer of forty-eight years but then indicated in the May 2016 email that "there was room to negotiate in the '40' range." To the extent the supplemental motion's allegations and its theories of deficient performance and prejudice are inconsistent with those set forth in the pro se motion, the supplemental motion controls. *See People v. Smith*, 2024 CO 3, ¶ 29.

¶ 6     As for prejudice, Howard alleged there was a reasonable probability that, but for counsel's errors, the prosecution would have extended "an offer in the 40s." And he said that if counsel had properly advised him about the benefits of such a sentence, he would have accepted the offer.

¶ 7     In a detailed, well-reasoned order, the district court denied Howard's motion without a hearing. The court determined that during plea negotiations, counsel made objectively reasonable strategy decisions aimed at securing an offer acceptable to Howard, and that Howard had sufficient information to evaluate any potential offer. The court also determined that, regardless, counsel's alleged errors did not prejudice Howard because it was improbable that the prosecution would have made a firm offer that Howard would have accepted.

## II.     Ineffective Assistance of Counsel Claims

¶ 8     Howard alleges that the district court erred by summarily denying his ineffective assistance of counsel claims. Though our reasoning differs in certain respects from that of the district court, we agree that Howard's motion does not warrant a hearing. *See People v. Taylor*, 2018 COA 175, ¶ 8 (appellate court can affirm the

5

district court's ruling on a Crim. P. 35(c) motion on any ground supported by the record).

### A. Legal Principles and Standard of Review

¶ 9 A criminal defendant has a constitutional right to the effective assistance of counsel. *People v. Rainey*, 2023 CO 14, ¶ 1. To prevail on a claim of ineffective assistance of counsel, the defendant must show that (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defense, meaning there is a reasonable probability that, but for counsel's errors, the outcome would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).

¶ 10 A defendant's right to the effective assistance of counsel extends to the plea bargaining process. *Missouri v. Frye*, 566 U.S. 134, 144 (2012); *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). Thus, a claim alleging ineffective assistance during plea negotiations is subject to *Strickland*'s two-part analysis. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To demonstrate prejudice in this context, the defendant must show that but for counsel's errors, there is a reasonable probability that he would have received and accepted a

6

plea offer and that his sentence under the offer would have been less severe than the sentence he received after trial. *People v. Delgado*, 2019 COA 55, ¶ 21.

¶ 11    "Because a defendant must show both deficient performance and prejudice, a court may resolve the claim solely on the basis that the defendant has failed in either regard." *People v. Karpierz*, 165 P.3d 753, 759 (Colo. App. 2006).

¶ 12    To warrant a hearing, the Crim. P. 35(c) motion must allege facts that, if true, would entitle the defendant to postconviction relief. *People v. Joslin*, 2018 COA 24, ¶ 4. Thus, the court may deny a motion without holding a hearing where the defendant's allegations are bare and conclusory; the allegations, even if true, do not state an ineffective assistance of counsel claim; or the record directly refutes the defendant's claims. *Id.*

¶ 13    We review the summary denial of a Rule 35(c) motion de novo. *People v. Luong*, 2016 COA 13M, ¶ 7.

### B. The District Court Did Not Err by Summarily Denying the Motion

¶ 14    Addressing each of Howard's claims in turn, we conclude that his factual allegations contradict his assertions of deficient

7

performance and prejudice or are otherwise insufficient to state an ineffective assistance of counsel claim.

### 1. Counsel's Failure to Disclose the Prosecution's Negotiating Position

¶ 15     Howard's primary claim is that his lawyers were ineffective for failing to relay the substance of the prosecutor's May 2016 email — that negotiations could only continue if Howard were willing to accept a sentence "at least in the 40s."[3]  But Howard never explains with specificity how counsel's failure to convey that information prejudiced him.  On appeal, he says only that counsel's error deprived him of an "opportunity to consider making an offer in the 40s."

---

[3] The People note that an exhibit to the supplemental motion appears to contradict Howard's allegation that his lawyers did not disclose the substance of the prosecutor's email.  They point to handwritten notes from counsel's May 2016 jail visit with Howard that include the following notations:

> - Advised DA has indicated ∮ offer
>         < 40's
> - Δ indicates will consider 35 years

Because we conclude that Howard's claim fails on other grounds, we need not consider whether the claim is directly refuted by the exhibit.

¶ 16    But Howard did not specifically allege that the prosecution would have agreed at *any* time to a sentence lower than forty-eight years.  And by his own account, as early as August 2016, the prosecution had confirmed that it would *not* consider a lower offer.

¶ 17    Moreover, Howard acknowledges that counsel's failure to communicate about the email did not prevent him from accepting an offer "in the 40s."  Howard's motion alleged that in August 2016, "there had been discussions of a 48-year offer," the prosecution would not consider a lower offer, and counsel had Howard meet with the prosecution in March 2017 in the hope that the forty-eight-year offer would be "reextend[ed]."  Howard did not allege that he was ever unaware that he could accept an offer of forty-eight years.

¶ 18    Thus, Howard has failed to sufficiently allege that his lack of knowledge of the May 2016 email prejudiced his ability to negotiate (or accept) an offer "in the 40s."

### 2. Counsel's Failure to Advise Howard of a Deadline for Securing a Plea Offer

¶ 19    Howard asserts that counsel were ineffective for failing to tell him that "there was an expiration to the ability to engage in plea negotiations." But in his motion, Howard alleged that the offer to negotiate "in the 40s" did not "explicitly come with an expiration date." And indeed, Howard's allegations demonstrate that both sides considered negotiations to be ongoing, even up to the week before trial. If there was no deadline for negotiating a plea offer, it follows that counsel did not perform deficiently by not advising Howard about a deadline for securing an offer.

¶ 20    But even if counsel should have explained in more general terms that time was of the essence, Howard did not sufficiently allege prejudice. In his motion, he said that counsel's failure to properly advise him meant that he lost an opportunity to make a counteroffer or negotiate a plea offer "in the 40s." But by August 2016, at the latest, the only possible offer available to Howard was a non-negotiable offer of forty-eight years.

¶ 21    True, in his motion, Howard said that he "had no idea he could not accept the prosecution's offer to 48 years during trial."

But he did not explain why that lack of knowledge mattered. For example, he did not allege that if he had known about a potential deadline for negotiations, he could have obtained a more favorable offer before August 2016 and would have accepted that offer. Nor did Howard allege that if he had known about a deadline, he would have tried to accept the potential forty-eight-year offer in August 2016 or at any time before March 2017, the month his trial started.

¶ 22 In the prejudice section of his motion, Howard alleged only that the reason he did not seek a plea offer more in line with the prosecution's demand "was because he was misadvised by counsel" to not "pursue plea negotiations," a statement that, in addition to having no connection to his purported unawareness of the plea negotiation deadline, seems inconsistent with his other factual allegations. In his reply brief on appeal, Howard adds that if he had known about a deadline, he would have "asked for an offer in the 40s earlier." But that allegation is still insufficient: he *had* a potential offer "in the 40s earlier" — a potential forty-eight-year offer. To show prejudice, he had to allege that if he had known he would run out of time to accept the forty-eight-year offer, he would

11

have tried to accept it earlier.  But he never says that, and his allegations suggest otherwise.

### 3. Counsel's Decision to Push Negotiations Higher Than Necessary

¶ 23    Howard claims that in August 2016, counsel improperly increased the starting point for negotiations by broaching a possible forty-eight-year sentence, despite the prosecution's willingness to negotiate for a sentence "in the 40s."

¶ 24    Howard points to an August 22, 2016, email to support this claim.  But the email shows that counsel was responding to a tentative offer from the prosecution.  When counsel asked, "Is there ANY chance that we can resolve this case with less than 48 years?", the prosecutor responded, "I don't think there is room on the offer."

¶ 25    At any rate, as we have noted, Howard did not specifically allege that the prosecution would have agreed at any point to a sentence of less than forty-eight years.  So even if counsel's email created a forty-eight-year starting point for negotiations, Howard has failed to sufficiently allege prejudice from that error.

¶ 26    Indeed, Howard's theory of prejudice is that if counsel had performed competently, the prosecution would have extended an

12

offer "in the 40s," and Howard would have accepted the offer. A forty-eight-year sentence is a sentence "in the 40s," so for this reason, too, counsel's reference to a forty-eight-year sentence could not have prejudiced Howard.

### 4. Failure to Consult With Howard's Family

¶ 27 Howard argues that his counsel were ineffective for failing to, first, educate his family about the strength of the prosecution's case (including his mother, a witness for the prosecution); and second, enlist his family members to "mak[e] him understand the seriousness of the situation and the benefits of the plea offer." According to Howard, this duty, which arises from juvenile defense standards, applies to his counsel because Colorado defense attorneys have adopted the standards in cases involving "18-year-olds facing life without parole." This claim fails on both the deficient performance and prejudice prongs.

¶ 28 In his motion, Howard alleged that his counsel's performance fell below the guidelines set forth in the Campaign for the Fair Sentencing of Youth (CFSY) and the National Juvenile Defense Standards (NJDS). Specifically, he pointed to CFSY standard 1.4 and NJDC standard 2.6. The former suggests that lawyers "should

be sensitive to the ongoing concerns and involvement of caretakers" and should provide family members "with regular updates and the opportunity to ask questions and receive clarification on the legal process." *See* The Campaign for the Fair Sentencing of Youth, *Trial Defense Guidelines: Representing a Child Client Facing a Possible Life Sentence,* https://perma.cc/AA78-D28Y. The latter advises lawyers to "work to overcome barriers to effective communication by . . . enlisting the help of outside experts or other third parties when necessary, and taking time to ensure the client has fully understood the communication." *See* National Juvenile Defender Center, *National Juvenile Defense Standards,* https://perma.cc/RL7F-ZBFF.

¶ 29 Neither standard requires defense counsel to disclose to family members the evidence against the client or to seek the assistance of family members in persuading the client to accept a plea offer. Thus, Howard has not shown that counsel had a duty to involve his family in the plea negotiations. And unless counsel had such a duty, their failure to discharge it cannot constitute deficient performance.

¶ 30    Additionally, Howard has never alleged any prejudice from counsel's failure to consult with his family.  He does not say, for example, that if his lawyers had spoken to his mother or stepfather, he would have agreed to accept a forty-eight-year plea offer sometime before the week of trial.

5.    Failure to Explain the Benefits of a Potential Plea Offer

¶ 31    Finally, Howard argues that counsel were ineffective for failing to explain the benefits of an offer of a sentence "in the 40s."  This claim is mostly bare and conclusory because, with one exception, Howard does not specifically allege what his lawyers should have told him to help him understand the offer's benefits.

¶ 32    The exception is the allegation that his counsel should have "meaningfully explain[ed] the difference between a life sentence without the possibility of parole [and] a 40-something-year sentence."  In our view, no detailed explanation would be necessary, so no prejudice resulted.  The difference between never being released from prison and someday being released from prison is self-explanatory, even to an eighteen-year-old.  At any rate, Howard never alleged that he did not understand the difference between

15

those sentences; he simply said that counsel did not do a good job of explaining it.

¶ 33 Likewise, any failure to explain the difference between a thirty-five-year sentence and a sentence "in the 40s" could not have prejudiced Howard. That difference is a matter of simple math — somewhere between six and fourteen years. In his motion, Howard acknowledged that counsel fully advised him of the consequences of accepting a thirty-five-year offer, including providing information about parole eligibility. Thus, we agree with the district court that, by his own admission, Howard had enough information to evaluate the benefit of an offer of a sentence "in the 40s."

## 6. Conclusion

¶ 34 In sum, Howard's factual allegations, even if true, do not support his legal claims of deficient performance or prejudice. Accordingly, the district court did not err by denying his ineffective assistance of counsel claims.

## III. Proportionality Challenge

¶ 35 The district court conducted an abbreviated proportionality review. It determined that first degree murder is a per se grave or serious crime and concluded that Howard's life without parole

sentence, which was legislatively mandated, was constitutional. In the alternative, it determined that, even if first degree murder were not a per se grave or serious crime, the facts of the case showed that the offense was grave or serious and therefore Howard's sentence was not grossly disproportionate.

¶ 36    On appeal, Howard contends that the district court erred in two ways: first, by determining that first degree murder is a per se grave or serious offense because a categorical per se grave or serious designation runs afoul of supreme court precedent and is unconstitutional; and second, by failing to consider Howard's age and background in determining whether the crime was nonetheless grave or serious as a matter of fact.

¶ 37    We agree with the district court and the People that Howard's proportionality challenge is arguably successive of the claim he raised on direct appeal. But because the district court elected to resolve the claim on the merits, we will too. We conclude that the first argument fails as a matter of law, and therefore we need not address the second argument.

A.    Legal Principles and Standard of Review

¶ 38    The Eighth Amendment prohibits sentences that are grossly disproportionate to the crime.  *Wells-Yates v. People*, 2019 CO 90M, ¶¶ 5, 10.  Whether a sentence is grossly disproportionate is a question of law that we review de novo.  *Id.* at ¶ 35.

¶ 39    A proportionality review involves a two-step process: an abbreviated proportionality review and, if needed, an extended proportionality review.  *Id.* at ¶¶ 7, 10.

¶ 40    In conducting an abbreviated review, the court compares (1) the gravity or seriousness of the offense and (2) the harshness of the penalty.  *Id.* at ¶¶ 11-14, 18.  Whether a crime is grave or serious ordinarily depends on the facts and circumstances underlying the offense and is determined by assessing the harm caused or threatened to the victim or society and the culpability of the offender.  *People v. Kennedy*, 2023 COA 83M, ¶ 14.  If a crime is grave or serious, and as long as the penalty is within the statutory range, the sentence is "nearly impervious to attack."  *Id.* at ¶ 15.

¶ 41    But when a crime is designated as "per se grave or serious," the reviewing court skips the first step of the abbreviated review — "i.e., was *this specific crime* grave or serious" — and "proceeds

18

straight to an assessment of the harshness of the penalty." *Id.* at ¶ 16. A crime is per se grave or serious if, based on its statutory elements, it necessarily involves grave or serious conduct, meaning the crime would be grave or serious in every potential factual scenario. *Wells-Yates*, ¶ 63.

## B. The Court Did Not Err in Its Proportionality Analysis

¶ 42 The per se grave or serious shortcut was first adopted in *People v. Gaskins*, 825 P.2d 30, 37 (Colo. 1992), *abrogated by*, *Wells-Yates v. People*, 209 CO 90M. Howard contends that the categorical designation of crimes as per se grave and serious, "without regard to the facts underlying the offense," is "a misapplication" of *Gaskins*'s holding. But that argument is foreclosed by *Wells-Yates*, which reaffirmed the per se grave and serious shortcut for certain crimes. *Wells-Yates*, ¶¶ 13, 62 (explaining that "[o]nce a crime has been deemed per se grave or serious," courts "skip the first subpart of step one . . . (gravity or seriousness) and proceed directly to the second subpart . . . (harshness of the penalty)").

¶ 43 Because we are bound by supreme court decisions, we must also reject Howard's argument that, notwithstanding *Wells-Yates*,

19

categorical per se grave or serious designations violate the Eighth Amendment. *See People v. Wright*, 2021 COA 106, ¶ 65 (rejecting the identical argument on the merits and because divisions of the court of appeals are "bound to follow our supreme court's decision in *Wells-Yates*").

¶ 44  Howard does not dispute that, if a per se grave or serious designation is allowable, first degree murder is a per se grave or serious offense. *See People v. Sellers*, 2022 COA 102, ¶ 65 (first degree felony murder is a per se grave or serious crime), *aff'd*, 2024 CO 64; *People v. Castillo*, 2022 COA 20, ¶ 42 (first degree extreme indifference murder is a per se grave or serious crime). Thus, the district court was not required to assess the particular circumstances of Howard's offense. *See Kennedy*, ¶ 16. And Howard does not argue that, even if first degree murder is a per se grave or serious crime, his sentence is nonetheless grossly disproportionate.

¶ 45  Accordingly, the district court did not err by concluding that Howard's sentence comports with the Eighth Amendment.

## IV.  Disposition

¶ 46  The order is affirmed.

JUDGE BROWN and JUDGE LUM concur.