The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 27, 2025

**2025COA34**

**No. 23CA1134, *People v. Duran* — Criminal Procedure — Postconviction Remedies; Crimes — Assault in the First Degree — Extreme Indifference; Constitutional Law — Eighth Amendment — Proportionality Review — Per Se Grave or Serious Offenses**

In this appeal from the summary denial of a Crim. P. 35(c) motion, a division of the court of appeals examines two challenges to a sentence imposed under a plea agreement.

First, the division considers the defendant's contention that the postconviction court erred by denying his claim that his plea counsel provided ineffective assistance by incorrectly advising him about his parole eligibility. The division concludes that the defendant's assertion that he would have gone to trial but for his plea counsel's incorrect advice is conclusory and refuted by the record because the prosecution's case against him was exceptionally strong, he faced the potential for a substantially

longer prison sentence if convicted at trial, and the record demonstrates that he was willing to accept the same parole eligibility date that he ultimately received.

Next, the division conducts an abbreviated proportionality review of the defendant's sentence and addresses an issue of first impression: whether extreme indifference first degree assault in violation of section 18-3-202(1)(c), C.R.S. 2024, is per se grave or serious under *Wells-Yates v. People*, 2019 CO 90M. The division concludes that it is per se grave or serious and that the defendant's sentence does not give rise to an inference of gross proportionality.

Accordingly, the division affirms the postconviction court's order.

COLORADO COURT OF APPEALS **2025COA34**

Court of Appeals No. 23CA1134
Jefferson County District Court No. 18CR5043
Honorable Jason Carrithers, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Juan Ignacio Duran,

Defendant-Appellant.

ORDER AFFIRMED

Division I
Opinion by JUDGE YUN
J. Jones and Brown, JJ., concur

Announced March 27, 2025

Philip J. Weiser, Attorney General, Allison S. Block, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Mulligan Breit, LLC, Patrick J. Mulligan, Denver, Colorado, for Defendant-Appellant

¶ 1    Juan Ignacio Duran appeals the postconviction court's order denying, without a hearing, his Crim. P. 35(c) motion alleging ineffective assistance of plea counsel and requesting an extended proportionality review of his sentence.  He claims that (1) his plea counsel provided ineffective assistance by incorrectly advising him about his parole eligibility and (2) the twenty-two-year sentence for his first degree assault conviction is disproportionately harsh.

¶ 2    We first conclude that Duran's claim that he would have gone to trial *but for* his plea counsel's incorrect advice is conclusory and refuted by the record because the prosecution's case against him was exceptionally strong, he faced the potential for a substantially longer prison sentence if convicted at trial, and the record demonstrates that he was willing to accept the same parole eligibility date that he ultimately received.

¶ 3    We then perform our own abbreviated proportionality review and encounter an issue of first impression: Is extreme indifference first degree assault in violation of section 18-3-202(1)(c), C.R.S. 2024, per se grave or serious under *Wells-Yates v. People*, 2019 CO 90M?  We conclude that it is per se grave or serious and that

Duran's sentence is not disproportionately harsh. We therefore affirm the postconviction court's order, albeit on different grounds.

## I. Background

¶ 4 Duran got off from work early on the Friday before New Year's Eve and went out drinking with some coworkers. After consuming a substantial amount of alcohol — eight shots and two beers, according to the People — he decided to drive to pick up his daughter from daycare.

¶ 5 Multiple bystanders called 911 to report that Duran was driving recklessly — running multiple red lights, nearly sideswiping cars, and hitting curbs. At one point, Duran drove around a pedestrian-only promenade and even across a footbridge that spanned a major street.

¶ 6 A police officer responding to the 911 calls encountered Duran barreling toward the officer's car on the wrong side of a road at around sixty miles per hour in a forty-mile-per-hour zone. The police officer managed to swerve out of Duran's path, but the drivers behind the officer were not so lucky. Duran sideswiped one car before colliding head on with a second, pushing it back into a

third vehicle.  Tragically, the driver of the second car was killed in the crash.

¶ 7     After his arrest, Duran admitted to the police that he had consumed "three half-packs of beer" before driving that night.  A blood test revealed that his blood alcohol content was 0.219 — nearly three times the level at which a person commits driving under the influence per se, *see* § 42-4-1301(2)(a), C.R.S. 2024 — and that his blood contained a significant amount of THC.

¶ 8     Duran pleaded guilty to vehicular homicide, extreme indifference first degree assault, and attempted extreme indifference first degree assault.  The sentencing range under the plea agreement was fifteen to forty years in prison.  The agreement did not address how much of his sentence Duran would need to serve before he would be eligible for parole.

¶ 9     During the plea hearing, Duran confirmed to the district court that he understood he was waiving his right to a jury trial.  He further acknowledged that, under the plea agreement, the sentence to be imposed would be "entirely within the Court's discretion, and it [was] up to 40 years in the [D]epartment of [C]orrections, and [he would] not be allowed to withdraw [his] guilty plea if [he did not] like

or disagree[d] with the sentence the Court imposes." But the sentencing court did not discuss how much of his sentence Duran would need to serve before becoming eligible for parole.

¶ 10    The court sentenced Duran to twelve years for vehicular homicide, twenty-two years for extreme indifference first degree assault, and seven years for attempted extreme indifference first degree assault. The twelve- and twenty-two-year sentences were to run concurrently with each other and consecutively to the seven-year sentence, resulting in an aggregate sentence of twenty-nine years in the custody of the Department of Corrections. After imposing the sentence, the sentencing court noted, "[B]ecause he's [pleaded] to violent crime, [Duran] generally at this point in time will serve about 75[%] of that sentence before he goes to halfway houses and out on parole." To be precise, Duran will need to serve 75% of his twenty-two-year sentence, *see* § 17-22.5-403(2.5)(a), C.R.S. 2024, and 50% of his seven-year sentence, *see* § 17-22.5-403(1) — for a total of twenty years, less any earned time granted under section 17-22.5-405, C.R.S.

2024[1] — before becoming eligible for parole.[2]  *See Owens v. Carlson*, 2022 CO 33, ¶¶ 44-45 (for consecutive sentences, the time required to become eligible for parole for each sentence is calculated individually, and then those calculations are added together to determine the final parole eligibility date).

¶ 11    Duran timely filed a Crim. P. 35(c) motion.  He alleged that his plea counsel had provided ineffective assistance by incorrectly advising him that he would need to serve only 50% of his sentence before becoming eligible for parole.  He also argued that his twenty-nine-year sentence was grossly disproportionate because his conduct was more akin to vehicular homicide than first degree assault.

---

[1] Section 17-22.5-405(1)(a), C.R.S. 2024, allows a defendant to earn up to ten days of "earned time" each month for demonstrating consistent progress in various areas, such as work and training, group living, participation in counseling sessions, and other positive behaviors.  As a result, a defendant has the potential to reduce the time he must serve by up to 30% of the length of his sentence. § 17-22.5-405(4)(a).

[2] Duran's sentence for vehicular homicide does not affect his parole eligibility because it runs concurrently with his longer extreme indifference first degree assault sentence.  *See Thiret v. Kautzky*, 792 P.2d 801, 808 (Colo. 1990) ("[T]he 'governing' sentence is the longest sentence . . . , and the relevant parole provisions of that sentence apply to the entire 'composite' sentence.").

¶ 12     In a detailed order, the postconviction court denied the motion without a hearing. In addressing the ineffective assistance claim, the postconviction court found that, "even if the failure to advise as to parole eligibility was ineffective, [Duran] ha[d] not shown that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." The court reasoned that the case against Duran was "exceptionally strong" and that, had he gone to trial, Duran would have "faced a minimum sentence of [twenty] years in prison and a maximum aggregate term of [sixty-four] years." And the court noted that Duran had accepted a plea agreement for a sentence of up to forty years, which means that, even "under the mistaken assumption that he would be eligible for parole after serving 50% of his sentence, [Duran] was fully prepared to serve up to [twenty] years" of his sentence before becoming eligible for parole.

¶ 13     Turning to Duran's constitutional challenge to his sentence, the postconviction court concluded that Duran's sentence does not give rise to an inference of gross disproportionality because Duran's actions were grave and serious, his conduct "fully support[ed] the

charge of [f]irst [d]egree [a]ssault," and he "was not sentenced to anywhere near the maximum" for his convictions.

## II. Ineffective Assistance of Plea Counsel

¶ 14  Duran first contends that the postconviction court erred by declining to hold a hearing on the claim that Duran's plea counsel provided ineffective assistance by misadvising him that he would be eligible for parole after serving only 50% of his sentence.[3]  We agree with the postconviction court that a hearing was not required because the record refutes Duran's conclusory assertion that he was prejudiced by the alleged deficient performance.

## A. Standard of Review and Governing Law

¶ 15  We review the summary denial of a Crim. P. 35(c) motion de novo.  *People v. Luong*, 2016 COA 13M, ¶ 7.  A postconviction court may deny a Crim. P. 35(c) motion without an evidentiary hearing if the allegations are bare and conclusory; the allegations, even if true, do not warrant relief; or the record directly refutes the

---

[3] Duran also states that his plea counsel "advised him that the court would likely impose a sentence at the lower end of the range." But because he does not develop this argument, we decline to address it.  *See People v. Liggett*, 2021 COA 51, ¶ 53 (appellate courts do not address undeveloped arguments), *aff'd*, 2023 CO 22.

allegations. *People v. Joslin*, 2018 COA 24, ¶ 4; *see also Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003).

¶ 16 A criminal defendant has a constitutional right to the effective assistance of counsel. *People v. Rainey*, 2023 CO 14, ¶ 1. To prevail on an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defense, meaning there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). "Because a defendant must show both deficient performance and prejudice, a court may resolve the claim solely on the basis that the defendant has failed in either regard." *People v. Karpierz*, 165 P.3d 753, 759 (Colo. App. 2006).

¶ 17 In the context of a guilty plea, the prejudice prong requires the defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see People v. Corson*, 2016 CO 33, ¶ 35; *People v. Sifuentes*,

8

2017 COA 48M, ¶ 20.  "This is an objective inquiry."  *Corson*, ¶ 35.

"Some objective evidence must corroborate the defendant's

testimony that he would have made a different decision about the

plea if he had been properly advised."  *Sifuentes*, ¶ 20.  Ultimately,

the defendant "must convince the court that a decision to reject the

plea bargain would have been rational under the circumstances."

*Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

¶ 18    In determining whether a decision to reject the guilty plea

would have been rational, a court should consider the strength of

the prosecution's case, the attractiveness of the plea deal, and the

risks of going to trial.  *Id.* at ¶ 21; *see Carmichael v. People*,

206 P.3d 800, 806 (Colo. 2009) (recognizing that the comparative

sentencing exposure between standing trial and accepting a plea

offer may be important to the decision whether to plead guilty);

*Corson*, ¶ 35 (same).

## B.    Discussion

¶ 19    Even if we assume that Duran received incorrect advice

regarding his parole eligibility and that this constituted deficient

performance by plea counsel, Duran's claim of prejudice — i.e., that

he would have gone to trial but for the incorrect advice — is

conclusory and refuted by the record. *See Karpierz*, 165 P.3d at 759.

¶ 20    Duran's Crim. P. 35(c) motion contained only the following conclusory allegation addressing prejudice: "[H]ad [Duran] been properly advised on the issue of parole eligibility, he would have exercised his constitutional right to trial." *See People v. Villanueva*, 2016 COA 70, ¶ 68 (A "conclusory allegation is insufficient to establish prejudice under *Strickland*."); *see also Carmichael*, 206 P.3d at 807 (a defendant's self-serving claim of prejudice is insufficient without some objective, corroborating evidence). In the motion, Duran did not allege that objective evidence would corroborate his assertion that he would have made a different decision about the plea had he been properly advised. *See Sifuentes*, ¶ 20. Duran did not allege that the prosecution's case was weak or flawed, nor did he identify a meritorious defense to the charges against him. *See id.* at ¶ 21. And Duran did not address in the motion the benefits of the plea agreement compared to the risks he would have faced had he gone to trial. *See id.*; *Carmichael*, 206 P.3d at 806; *Corson*, ¶ 35.

10

¶ 21    Even on appeal, Duran does not address a rationale for rejecting the plea agreement and risking a trial.  Instead, he argues that "a defendant is not required to 'prove' his allegations in his postconviction motion" to be entitled to an evidentiary hearing. While this is a correct statement of law, *see White v. Denver Dist. Ct.*, 766 P.2d 632, 635 (Colo. 1988), a postconviction court may deny a motion without a hearing if "the files and record of the case show to the satisfaction of the court that the defendant is not entitled to relief," Crim. P. 35(c)(3)(IV); *see Joslin*, ¶ 4.  That is the case here — the record clearly refutes Duran's conclusory allegation.

¶ 22    As the district court noted, the case against Duran was "exceptionally strong."  *See Sifuentes*, ¶ 21.  Video footage from the bar showed Duran consuming eight shots and two beers.  The arrest affidavit and providency hearing revealed that, immediately after Duran left the bar, numerous witnesses called 911 to report his erratic driving and strange behavior — running multiple red lights, driving over curbs, driving over a pedestrian bridge, nearly sideswiping other cars, and public urination.  A police officer witnessed Duran speeding up a main thoroughfare in the wrong

11

direction toward him. After the officer swerved to avoid him, Duran sideswiped one vehicle and collided head on with another. Moreover, a blood test taken near the time of the accident demonstrated that Duran's blood alcohol content was 0.219. And had he been convicted at trial, Duran would have faced a maximum aggregate prison term of sixty-four years — twenty-four years longer than the maximum under the plea agreement. *See Carmichael*, 206 P.3d at 806; *Corson*, ¶ 35. Under these circumstances, it would not have been rational for Duran to reject the plea agreement and insist on going to trial based solely on the difference in parole eligibility, as Duran claims.

¶ 23     More importantly, the record demonstrates that Duran was willing and prepared to accept a forty-year prison sentence. During the plea hearing, the sentencing court specifically asked him whether he was willing to accept the plea knowing that the court could impose a sentence "up to [forty] years in the [D]epartment of [C]orrections." The court even warned him that "you will not be allowed to withdraw your guilty plea if you don't like or disagree with the sentence the Court imposes." Despite this, he accepted the plea. This means that, even under the mistaken belief that he

would need to serve only half of his sentence, Duran was prepared to spend twenty years in prison before becoming eligible for parole. That is the same amount of time he is required to serve before becoming parole eligible now. Accordingly, Duran's twenty-nine-year sentence with parole eligibility after twenty years is less harsh than the forty-year sentence with parole eligibility after twenty years that he was willing to accept.

¶ 24 The record therefore refutes the claim that Duran would have insisted on going to trial *but for* his plea counsel's parole advice. *See Hill*, 474 U.S. at 59; *Corson*, ¶ 35. Consequently, Duran's allegation of prejudice is insufficient, and the postconviction court did not err by denying his ineffective assistance of counsel claim without a hearing.

### III. Proportionality Review

¶ 25 Next, Duran contends that his twenty-two-year sentence for extreme indifference first degree assault[4] is disproportionately

---

[4] Duran does not contend that his sentences for vehicular homicide or attempted extreme indifference first degree assault are individually disproportionate. And to the extent Duran argues that his twenty-nine-year aggregate sentence is grossly disproportionate, "that aggregate imprisonment term is not subject to proportionality review." *Wells-Yates v. People*, 2019 CO 90M, ¶ 74.

13

harsh when compared to his conduct. Specifically, he argues that (1) his conduct resembles that of vehicular homicide more than extreme indifference first degree assault, so we should consider vehicular homicide the applicable offense for our proportionality review; (2) vehicular homicide is not per se grave or serious, nor was his underlying conduct; and (3) his twenty-two-year sentence is unduly harsh, particularly given that he has no prior felony convictions. We address and reject each contention in turn.

### A. Standard of Review and Governing Law

¶ 26 We review de novo whether a sentence raises an inference of gross disproportionality. *Wells-Yates*, ¶ 35. If the analysis does not require an inquiry into facts that are outside the appellate record, as is the case here, we are as well positioned as the postconviction court to conduct an abbreviated proportionality review. *People v. Loris*, 2018 COA 101, ¶ 10. And we may affirm the postconviction court's order on any ground supported by the record, whether or not the postconviction court relied on or considered that ground. *People v. Cooper*, 2023 COA 113, ¶ 7.

¶ 27 The Eighth Amendment to the United States Constitution prohibits the imposition of a sentence that is grossly

14

disproportionate to the severity of the crime committed. *Solem v. Helm*, 463 U.S. 277, 284-85 (1983); *Wells-Yates*, ¶ 5. But it "does not require strict proportionality between crime and sentence." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment) (citing *Solem*, 463 U.S. at 288, 303); *see also Close v. People*, 48 P.3d 528, 536 (Colo. 2002), *abrogated on other grounds by Wells-Yates*, ¶¶ 16-17. Rather, it forbids only extreme sentences that are grossly disproportionate to the crime. *Close*, 48 P.3d at 536.

¶ 28 Colorado courts conduct a two-step analysis when considering a proportionality challenge. *Wells-Yates*, ¶ 10. In step one — an abbreviated proportionality review — the court compares the gravity and seriousness of the offense with the harshness of the penalty. *Id.* at ¶¶ 7-14. In step two — an extended proportionality review — the court compares the challenged sentence to sentences for other crimes in the same jurisdiction and the same crime in other jurisdictions. *Id.* at ¶¶ 15-17. The court should proceed to step two only when the comparison between the gravity and seriousness of the offense and the harshness of the penalty gives rise to an inference of gross disproportionality. *Id.* at ¶ 15.

¶ 29    Ordinarily, "the determination of whether the crime is grave or serious depends on the facts and circumstances underlying the offense." *People v. Hargrove*, 2013 COA 165, ¶ 12, *abrogated on other grounds by Wells-Yates*, ¶¶ 16-17.  The gravity or seriousness of an offense can be determined by considering "the harm caused or threatened to the victim or society," as well as "the culpability of the offender."  *Wells-Yates*, ¶ 12 (quoting *Solem*, 463 U.S. at 292); *People v. Session*, 2020 COA 158, ¶ 33.

¶ 30    But some crimes are designated per se grave or serious for purposes of a proportionality review.  *See Wells-Yates*, ¶ 13.  For these crimes, the court may skip the fact-focused gravity or seriousness analysis and proceed directly to considering the harshness of the penalty.  *Id.*; *Session*, ¶ 34.

¶ 31    When considering the harshness of the penalty, "a great deal of deference is due to legislative determinations regarding sentencing."  *People v. Deroulet*, 48 P.3d 520, 523 (Colo. 2002), *abrogated on other grounds by Wells-Yates*, ¶¶ 16-17.  "[I]n almost every case, the abbreviated proportionality review will result in a finding that the sentence is constitutionally proportionate, thereby preserving the primacy of the General Assembly in crafting

16

sentencing schemes." *Id.* at 526; *see also Wells-Yates*, ¶ 21. The assessment of the harshness of the penalty includes consideration of the sentence's length and the defendant's parole eligibility. *Wells-Yates*, ¶ 14. Indeed, whether a defendant is parole eligible is relevant to an abbreviated proportionality review because parole can reduce the actual period of confinement and render the penalty less harsh. *Id.*

### B. Extreme Indifference First Degree Assault Is the Applicable Offense

¶ 32  As an initial matter, Duran argues that his "underlying conduct" should be viewed as more consistent with vehicular homicide rather than extreme indifference first degree assault. Therefore, he contends that we should use vehicular homicide for our proportionality analysis. But Duran is challenging the sentence imposed on his conviction for extreme indifference first degree assault, and his guilty plea was "an admission of all material facts — including that he committed each of the elements of" that offense. *People v. Crawley*, 2024 COA 49, ¶ 16. It makes no sense to evaluate the harshness of the penalty for a particular offense by treating that offense as something it is not. Consequently, extreme

17

indifference first degree assault is the applicable offense for our analysis.  *See id.*

### C.    Extreme Indifference First Degree Assault Is Per Se Grave or Serious

¶ 33    In an abbreviated proportionality review, we first assess the gravity or seriousness of the offense, starting with the threshold question of whether it is per se grave or serious.  Before *Wells-Yates* was announced, a division of this court held that first degree assault is per se grave or serious.  *See People v. Gee*, 2015 COA 151, ¶ 60.  "But *Wells-Yates* called into question all pre-existing per se designations" — including first degree assault — "apart from those it identified as satisfying the new definition" of per se grave or serious."  *Crawley*, ¶ 18.  And no published appellate opinion has addressed whether extreme indifference first degree assault is a per se grave or serious offense under the standard announced in *Wells-Yates*.  We now consider the question and conclude that it is.

¶ 34    *Wells-Yates* held that "the designation of per se grave or serious for purposes of a proportionality review must be reserved for those rare crimes which, based on their statutory elements, necessarily involve grave or serious conduct," meaning a crime

18

should not be given the designation unless it is grave or serious in every potential factual scenario. *Wells-Yates*, ¶ 63. As an example,

> robbery is per se grave or serious because, in every potential factual scenario, a person convicted of robbery "knowingly took something of value from the person or presence of another by the use of force, threats or intimidation," which always involves "knowing conduct and grave harm (or the threat of grave harm) to the victim or society (or both)." Put differently, robbery is per se grave or serious because the statutory elements ensure that there is no way to commit the crime in a manner that is not grave or serious.

*Crawley*, ¶ 20 (quoting *Wells-Yates*, ¶ 64); *see Wells-Yates*, ¶ 65 (holding aggravated robbery, burglary, accessory to first degree murder, and the sale or distribution of narcotics satisfy the new standard and remain per se grave or serious).

¶ 35    With this standard in mind, we now examine extreme indifference first degree assault. A person commits extreme indifference first degree assault when, "[u]nder circumstances manifesting extreme indifference to the value of human life, he knowingly engages in conduct which creates a grave risk of death to another person, and thereby causes serious bodily injury to any person." § 18-3-202(1)(c). According to this definition, extreme

indifference first degree assault always involves knowing conduct and grave harm — serious bodily injury. *See Wells-Yates*, ¶ 64; *see also Gee*, ¶ 60 ("[B]y its nature, first degree assault involves violence or the potential for violence . . . ."). Moreover, the knowing conduct involves "circumstances manifesting extreme indifference to the value of human life" and "creates a grave risk of death to another person," thereby risking harm to society at large. § 18-3-202(1)(c); *see Wells-Yates*, ¶ 64. And the General Assembly has determined that extreme indifference first degree assault is a per se crime of violence and an extraordinary risk crime. § 18-3-202(2)(c); § 18-1.3-406(2)(a)(II)(C), C.R.S. 2024; *see Crawley*, ¶ 21 (considering second degree murder's classification as a crime of violence and extraordinary risk crime in concluding it is per se grave or serious).

¶ 36    Thus, given the statutory elements of extreme indifference first degree assault, "regardless of the facts and circumstances involved, a defendant who stands convicted of [the] offense will have committed a crime that is necessarily grave or serious." *Wells-Yates*, ¶ 65. Accordingly, extreme indifference first degree assault satisfies the standard articulated in *Wells-Yates* and is per se grave or serious.

¶ 37   Because Duran committed a per se grave or serious offense, we skip the gravity or seriousness analysis based on the specific facts of this case and proceed directly to the harshness of the penalty. *See id.* at ¶ 13.

### D.   The Penalty Is Not Disproportionately Harsh

¶ 38   Any review of the harshness of a penalty "is substantially circumscribed because the legislature's establishment of the harshness of the penalty deserves great deference. Consequently, a per se grave or serious designation 'renders a sentence nearly impervious to attack on proportionality grounds.'" *Wells-Yates,* ¶ 62 (citations omitted); *see Deroulet,* 48 P.3d at 523; *Rutter v. People,* 2015 CO 71, ¶ 16 ("[I]n non-capital cases, courts will rarely conclude that a defendant's sentence is grossly disproportionate.").

¶ 39   Duran's twenty-two-year sentence was toward the middle of the sentencing range for extreme indifference first degree assault. *See* § 18-3-202(2)(b); § 18-1.3-401(1)(a)(V)(A.1), (10)(a), C.R.S. 2024; § 18-1.3-406(1)(a); *Deroulet,* 48 P.3d at 526. And Duran will be eligible for parole after serving 75% of his sentence, *see* § 17-22.5-403(2.5)(a), potentially shortening the actual period of confinement for that crime to about sixteen and a half years or even

less depending on any earned time granted under section 17-22.5-405. *See Wells-Yates*, ¶ 14.

¶ 40 Even so, Duran contends the sentence is too harsh because he had no prior felony convictions. But while that is a factor we consider, it does not outweigh the other circumstances, especially given that Duran's per se grave or serious crime resulted in the death of the victim — a result more grave than serious bodily injury. *See People v. Myers*, 45 P.3d 756, 757 (Colo. App. 2001) ("[A] lengthy sentence may be justified even in the absence of a prior criminal record when the offense is particularly egregious.").

¶ 41 Duran's sentence near the midpoint of the range set by the General Assembly is not unduly harsh when compared to the gravity and seriousness of extreme indifference first degree assault. Because we find no inference of gross disproportionality, we agree with the postconviction court that an extended proportionality review is not warranted. *See Wells-Yates*, ¶ 8.

IV. Disposition

¶ 42 The order is affirmed.

JUDGE J. JONES and JUDGE BROWN concur.