23CA2161 Peo v Uchner 05-08-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA2161
El Paso County District Court No. 22CR1767
Honorable Jill M. Brady, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Elroy John Uchner,

Defendant-Appellant.

ORDER AFFIRMED

Division IV
Opinion by JUDGE GROVE
Harris and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 8, 2025

Philip J. Weiser, Attorney General, Brian M. Lanni, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Elroy John Uchner, Pro Se

¶ 1    Defendant, Elroy John Uchner, appeals the district court's denial of his Crim. P. 35(c) motion filed shortly after judgment of conviction entered on his guilty plea.  We affirm.

## I.    Background

¶ 2    According to the arrest warrant affidavit, Uchner drove his truck up and down a street in unincorporated El Paso County, doing "donuts" and "burnouts."  The truck nearly struck two brothers, B.C. and R.C., who were working on R.C.'s car.  B.C. swung his wrench out, hitting the taillight of Uchner's truck as it passed.  Uchner stopped, got out, apologized, and said he was having a hard time because he was going through a divorce.  B.C. told Uchner to leave.

¶ 3    Later that night, Uchner returned, stopping outside the brothers' home.  B.C. approached the truck, and Uchner sped away, crashing into a parked vehicle down the street.  He then fled the scene.  B.C. wrote down Uchner's license plate number and left it on the windshield of the damaged vehicle.

¶ 4    A few hours later, B.C. and R.C. again heard Uchner's truck, which had a loud exhaust, outside their home.  They stepped outside, and Uchner leaned out the window of his truck and opened

1

fire with an AK-47.  Bullets struck both brothers in the legs.  In addition, stray bullets struck nearby homes, including at least one that was occupied at the time.  Uchner again fled the scene.

¶ 5     A police officer went to Uchner's home, and Uchner answered the door wearing the same clothing B.C. had described to police.  Uchner told the officer he had been home all night and did not know where his truck was.  Police executed a search warrant at the home and found an AK-47 hidden inside a wall, ammunition matching the shell casings recovered from the scene, and a truck with significant front-end damage.

¶ 6     The prosecution charged Uchner with, among other things, multiple counts of attempted first degree murder, attempted second degree murder, and first degree assault.  The complaint also charged twenty violent crime sentence enhancers.

¶ 7     Pursuant to a plea agreement, Uchner pleaded guilty to two counts of extreme indifference first degree assault as crimes of violence.  The parties stipulated to consecutive ten-year sentences on each count, and the prosecution agreed to dismiss all remaining counts.  The district court accepted Uchner's guilty plea and imposed the agreed-upon sentences.

2

¶ 8     A few months later, Uchner filed a pro se Crim. P. 35(c) motion asserting that his guilty plea was the product of plea counsel's ineffective assistance.  In particular, he asserted that counsel failed to conduct a sufficient investigation, which would have revealed (1) viable defenses "based on self-defense, pervasive fraud, and outrageous government misconduct"; and (2) "a substantial volume of impeaching evidence that would have discredited any statements presented by the complaining witnesses."  To compensate for this deficient investigation, Uchner claimed, counsel coerced him into pleading guilty and conspired with the prosecution to force his guilty plea "in an effort to avoid his duty to investigate" and "avoid procuring the necessary experts to prove [he] sustained a head injury and acted in self-defense when nearly killed by [B.C. and R.C.]"  He further asserted that his agreed-upon sentences constituted cruel and unusual punishment because they were disproportionate to his crimes.

¶ 9     The district court denied the motion in a written order, concluding that Uchner's ineffective assistance claims were bare, conclusory, and lacking in detail.  The court further concluded that Uchner's ten-year sentences — near the bottom of the legislatively-

mandated range — did not raise an inference of gross disproportionality because the underlying crimes were grave and serious and Uchner is parole eligible.

## II.    Discussion

¶ 10    Uchner contends that the district court erred by denying his postconviction motion without a hearing.  He reasserts his ineffective assistance of counsel and proportionality claims.  Reviewing the district court's decision to deny the motion de novo, *People v. Cali*, 2020 CO 20, ¶ 14, we perceive no error.

### A.    The Ineffective Assistance Claims Were Bare and Conclusory

¶ 11    A district court may deny a Crim. P. 35(c) claim of ineffective assistance of counsel if the claim is bare and conclusory in nature, or lacks supporting factual allegations.  *People v. Osorio*, 170 P.3d 796, 799 (Colo. App. 2007); *People v. Zuniga*, 80 P.3d 965, 973 (Colo. App. 2003).  In the context of an ineffective assistance claim based on a failure to investigate, a defendant's allegations are conclusory if they fail to specifically allege "what additional investigation counsel should have done, what the results of those efforts would have been, and how they would have affected the outcome of the case."  *Zuniga*, 80 P.3d at 973.

4

¶ 12     We agree with the district court that Uchner's claim of ineffective assistance related to counsel's allegedly deficient investigation was bare and conclusory. Uchner claimed that, had counsel conducted a sufficient investigation, it would have revealed viable defenses including self-defense, fraud, and outrageous governmental conduct. He also claimed that such an investigation would have revealed substantial impeaching evidence that could have been used to discredit the complaining witnesses' statements. But he provided no factual allegations supporting these claims. Though he alluded to a head injury he allegedly sustained when "nearly killed" by the victims, he did not assert what head injury he suffered, how it would have supported a claim of self-defense, or what an expert that counsel allegedly failed to consult might say. Nor did he identify the sources, context, or details of any of the alleged fraud, outrageous government conduct, or allegedly impeaching evidence that would have undermined the statements of the complaining witnesses. Under these circumstances, we cannot conclude that the district court erred in determining that Uchner's claims of deficient investigation were bare and conclusory. And to the extent he adds details on appeal, we will not consider them.

*See People v. Rodriguez*, 914 P.2d 230, 251 (Colo. 1996) (rejecting attempts to use appellate briefing to "fortify" issues inadequately raised or supported in a postconviction motion).

¶ 13    Uchner's motion also asserted that his plea "was the product of bad plea advice," rendering it involuntary, unknowing, and unintelligent. But he partially premised that assertion on the alleged investigatory failures. Having rejected Uchner's deficient investigation claim as bare and conclusory, we necessarily find no error in the district court's rejection of this plea advisement claim. And to the extent Uchner asserted that plea counsel erroneously advised him that he faced "a virtual life sentence," there is nothing "misleading or inaccurate" about advising a defendant as to the penalties he faces if convicted of the charged offenses. As the People point out, Uchner faced, at a minimum, attempted first degree murder counts related to both B.C. and R.C. Charged as crimes of violence, each count carried a potential sentence of forty-eight years. §§ 18-1.3-401(1)(a)(V.5)(A), 18-1.3-406(1)(a), C.R.S. 2024. And because they involved separate victims, consecutive sentencing was required. *People v. Espinoza*, 2020 CO 43, ¶ 21 (attempted murder offenses committed against different victims are

not capable of being proved by identical evidence, and such "separate crimes of violence" require consecutive sentences). We cannot conclude that it was misadvice to inform Uchner that a cumulative sentence of at least ninety-six years meant a virtual lifetime in prison.

### B. Uchner's Sentences Did Not Raise an Inference of Gross Disproportionality

¶ 14 The Eighth Amendment to the United States Constitution prohibits the imposition of a sentence that is grossly disproportionate to the severity of the crime committed. *Solem v. Helm*, 463 U.S. 277, 284-85 (1983); *Wells-Yates v. People*, 2019 CO 90M, ¶ 5. But it "does not require strict proportionality between crime and sentence." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment) (citations omitted). Rather, it forbids only extreme sentences that are grossly disproportionate to the crime. *People v. Duran*, 2025 COA 34, ¶ 27.

¶ 15 Colorado courts conduct a two-step analysis when considering a proportionality challenge. *Wells-Yates*, ¶ 10. In step one — an abbreviated proportionality review — the court compares the gravity

and seriousness of the offense with the harshness of the penalty. *Id.* at ¶¶ 7-14. In step two — an extended proportionality review — the court compares the challenged sentence to sentences for other crimes in the same jurisdiction and the same crime in other jurisdictions. *Id.* at ¶¶ 15-17. The court should proceed to step two only when the comparison between the gravity and seriousness of the offense and the harshness of the penalty gives rise to an inference of gross disproportionality. *Id.* at ¶ 15.

¶ 16 We review de novo whether a sentence raises an inference of gross disproportionality. *Id.* at ¶ 35.

¶ 17 In his postconviction motion, Uchner agreed that the two extreme indifference first degree assault charges to which he pleaded guilty "may be characterized as grave and serious." He argued, however, that his actual conduct was innocent, and neither serious nor egregious.

¶ 18 True, "the determination of whether [a] crime is grave or serious" ordinarily "depends on the facts and circumstances underlying the offense." *Duran*, ¶ 29 (citation omitted). But some crimes are designated per se grave or serious for purposes of a proportionality review. *See Wells-Yates*, ¶ 13. For these crimes, the

court may skip the fact-focused gravity or seriousness analysis and proceed directly to considering the harshness of the penalty. *Duran*, ¶ 30.

¶ 19    In *Duran*, a division of this court recently analyzed extreme indifference first degree assault and held that it is a per se grave and serious crime. *Id.* at ¶ 36. We agree with the analysis in *Duran*. And because Uchner was convicted of extreme indifference first degree assault, we proceed directly to considering the harshness of his sentences on these counts.

¶ 20    Our review of the harshness of a penalty "is substantially circumscribed because the legislature's establishment of the harshness of the penalty deserves great deference. Consequently, a per se grave or serious designation 'renders a sentence nearly impervious to attack on proportionality grounds.'" *Wells-Yates*, ¶ 62 (citations omitted).

¶ 21    As noted, Uchner received a ten-year sentence for each of his two extreme indifference first degree assault convictions, both of which were crimes of violence. As the district court observed, ten years is toward the low end of the sentencing range for extreme indifference first degree assault as a crime of violence. *See* §§ 18-3-

202(2)(b), 18-1.3-401(1)(a)(V.5)(A), 18-1.3-406(1)(a), C.R.S. 2024. Moreover, Uchner will be eligible for parole after serving seventy-five percent of his cumulative sentence, *see* § 17-22.5-403(2.5)(a), C.R.S. 2024, potentially shortening the actual period of confinement for his crimes. *See Duran*, ¶ 41 (concluding, for the same reasons, that a twenty-two-year sentence for one count of extreme indifference first degree assault was not unduly harsh relative to the gravity and seriousness of the crime). Because we discern no inference of gross disproportionality, we agree with the district court that an extended proportionality review is not warranted.

## C.    Request for Oral Argument

¶ 22    Uchner requests oral argument in his reply brief. This request is denied. *See* C.A.R. 34(a) ("A request for oral argument must be made in a separate document entitled 'request for oral argument.'").

## III.    Disposition

¶ 23    The order is affirmed.

JUDGE HARRIS and JUDGE PAWAR concur.